383 So.2d 1084 (1980)
Robert Donald FLITER
v.
Doris Jean FLITER.
No. 51813.
Supreme Court of Mississippi.
May 14, 1980.
Joffe & LeSieur, Scherry J. LeSieur, Biloxi, for appellant.
Breland & Barnett, Norman L. Breland, Gulfport, for appellee.
Before SMITH, P.J., BROOM and COFER, JJ.
COFER, Justice, for the Court:
This case is here on appeal from the Chancery Court of the Second Judicial District of Harrison County. Robert Donald Fliter has taken the appeal, and Doris Jean Fliter, his former wife and the mother of their son, is the appellee. It results from an unsuccessful attack by appellant on the propriety of appellee's combining in one action her suit for divorce against appellant and a suit for child support under Chapter 453, Laws of Mississippi (1978), effective July 1, 1978, and now appearing as Mississippi Code Annotated, section 93-11-67 (Supp. 1979). The statute reads as follows:
(1) In an action for child support, a court may exercise personal jurisdiction over and enter a judgment in personam against a defendant if personal service of process is made as provided below and if the parties had resided in a marital relationship with each other in this state for thirty (30) days and if the complainant *1085 has continuously resided in this state after the defendant has become a nonresident.
(2) The defendant shall be personally served with a summons and a copy of the petition in the manner prescribed by the law of the state in which service is made or by any form of mail addressed to the defendant with a receipt showing personal delivery or by personal service outside this state in the manner prescribed for service within this state.
(3) Proof of service outside this state may be by affidavit of the individual who made service or in the manner prescribed by the law of this state or in the manner prescribed by the law of the state in which service is made. If service is by mail, proof may be a receipt signed by the defendant or other evidence of personal delivery to the defendant.
The parties were married at Biloxi on September 30, 1975, and were separated in March 1977 at Biloxi. Appellant is a non-resident of the state, having left the state in October 1977, and having at all times since remained absent from this state.
The parties undertook to stipulate facts which would bring the case into proper focus and perspective for this decision. This stipulation is as follows.
1. That complainant and defendant were married on September 30, 1975, in Biloxi, Mississippi, and separated in March of 1977.
2. That the defendant left Biloxi, Mississippi, and removed himself from the jurisdiction of the State of Mississippi in October of 1977, and that he remained absent from this jurisdiction willfully, continually, obstinately for a period of one year as of October 31, 1978, and continued to remain absent in the same manner since that time up and until this date, and continues to remain so absent from the jurisdiction.
3. That he has made a special appearance in this cause by and through his counsel as aforesaid to contest the jurisdiction of the Decree rendered by this Court on March 21, 1979, pursuant to Section 93-11-67, Mississippi Code of 1972, Annotated.
4. That the defendant has contributed the sum of $100 per month to the complainant since he has been absent from the jurisdiction of the Court, the same being paid from Denver, Colorado, from his retirement pay, and additional sums since October 1977, through April 10, 1979, for a total of $2,200.
5. That the defendant is 43 years of age and the complainant is 46 years of age; that they have one child born of their marital union, Donald Keith Fliter, who is 14 years of age and who resides with the complainant in Biloxi, Mississippi.
6. That the last day of the March Term of the Chancery Court of the Second Judicial District of Harrison County, Mississippi, was Friday, April 6, 1979, and that the complainant's attorney received a copy of the Motion to Set Aside Final Decree of Divorce on April 5, 1979, and that the Chancellor signed an order setting the case over to a vacation time hearing pursuant to motion filed by the Defendant's attorneys in the absence of the complainant's attorneys.
7. That Honorable Jason Floyd, Jr., the presiding Chancery Court Judge, who signed the Final Decree of Divorce at issue, was associated with the law firm of Breland and Barnett prior to taking the bench, and that because Judge Floyd was involved in representing the complainant prior to assuming his duties as chancellor, Judge Floyd recused himself from the case when it became apparent that the Court's jurisdiction in the instant divorce action was to be contested.
8. That the defendant, Robert Donald Fliter, received notice of publication which was instituted on December 1, 1978, but no return receipt was requested by the Clerk of the Court.
9. That a summons was issued returnable by certified mail, return receipt requested, the return being dated January 6, 1979.
10. That subsequent to that, complainant's attorneys requested that the complaint and the summons be mailed by certified mail, return receipt requested, to the *1086 defendant Robert Donald Fliter, and that the same was acknowledged and signed for on January 16, 1979, by Robert Donald Fliter, and that his signature as appears thereon, copies of said return receipt being made a part hereof, are authentic and genuine and are, in fact, the signature of the defendant who had not only notice of the complaint, but who had a copy of the complaint from January 16, 1979, until the decree was rendered, and that he had a copy of the summons for said time, and that he further had a copy of the summons from January 6, 1979.
11. That the defendant did nothing toward defending said summons and complaint and remained absent from the jurisdiction.
12. That the complainant and defendant resided in a marital relationship for at least 30 days next preceding their separation which took place in March of 1977, and that the defendant remained in Harrison County, Mississippi, until on or about October of 1977, at which time he left the State of Mississippi and took up residence in California.
13. That the defendant has been represented by opposing counsel, Carl Joffe and Scherry LeSieur since January 16, 1979, and that they have represented the said defendant since that time up, until, and during the present time.
14. That the testimony of Mrs. Fliter was to the effect that the defendant was able-bodied and gainfully employed with a United States Air Force retirement of at least $460 per month, and that such facts are hereby stipulated.
From the stipulation it is apparent that, after the suit was filed, process was served on appellant in one of the manners provided in Section 93-11-67, quoted above, and that, without appearing to make defense against the suit, appellant suffered a decree to be entered awarding to his wife a divorce and the custody of their child and a monthly award for the support of the child. The decree was entered March 21, 1979, and, on April 5, 1979, a date within the same term, he made a special appearance and filed his motion to set aside the portions of the decree which act upon him in a personal manner, which, he alleged, was undertaken pursuant to the statute here under attack. In the motion, he asserted that the statute is a part of the Uniform Reciprocal Enforcement of Support statutes, a fact, he contends, is evidenced by its codification as a part of that statute, and the legislative intent was to "provide a method by which a complainant could enforce the payment of past due support payments, which were formerly not recoverable under the reciprocal enforcement of support laws, and not to create a means of conferring original in personam jurisdiction upon the court to order such support."
The chancery court, with the above stipulation before it, overruled the motion, stating, in a well-reasoned opinion, that the relief afforded by the statute might be sought and awarded in an action, such as here, where divorce is also involved; that such conclusion is in keeping with equity's desire to do complete justice and is well within the public policy of the state.
Appellant assigns only one error for reversal:
The chancellor erred in applying the statute to an original divorce action, and by such misapplication in exercising in personam jurisdiction over the nonresident appellant, in ordering appellant to pay $400 per month as child support.
The award of divorce is not before us.
In argument and in his brief, he makes attack also upon the jurisdiction in this particular case, which will hereinafter be noted.
Appellant's chief argument in support of his position is that the statute is a part, or an enlargement of our "reciprocal support" statutes, Section 93-11-1, et seq., and draws support, he believes, from the fact that it has become codified as a part of that statute. (Actually, the last section of the chapter.) We are not persuaded.[1]
*1087 Appellant's main attack is the fact that appellee combined in her bill of complaint prayers for divorce, custody of the child, and support of the child. He insists that the last item of relief, child support, must be the sole prayer. He would in essence, read the words "in an action for child support," as meaning "in an action for child support alone" or "in an action for child support only," or "in an action wherein child support is the only relief sought." We do not believe that we are thus to amend the statute. The child support sought and decreed in the suit is very closely akin to the prayer for divorce, and, where both are desired, are most properly combined in one action, affording an opportunity to do complete justice between the parties.
We see no insurmountable obstacles in the fact that as to divorce the proceeding is in rem, while that part of it having to do with child support, has, under the present statute, become in personam.
This Court has said in dealing with section 13-3-63 (nonresident motorist process statute) that:
The basic purposes of the act are to provide a remedy for citizens of this state against nonresidents who operate automobiles within the state, and to afford a nonresident adequate notice of a pending suit with reasonable opportunity to defend the action. Nationwide Mutual Ins. Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (1964).
Ellis v. Milner, 194 So.2d 232, 235 (Miss. 1967).
In 1975, the Supreme Court of Texas, in Mitchim v. Mitchim, 518 S.W.2d 362 (1975), had before it the issue of whether the Arizona court had jurisdiction to award a decree for alimony against Mitchim. In its decision, it said, and in doing so, quoted with approval from Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679 (1968), as follows:
In recent years a number of states have adopted long-arm statutes with specific language making them applicable to cases growing out of domestic difficulties. These statutes are given their intended effect. (citations omitted). In other states long-arm statutes containing only general language have been held to confer personal jurisdiction over nonresident defendants in divorce actions... .
The Supreme Court of the United States has not held that a long-arm statute is constitutionally incapable of conferring personal jurisdiction in cases involving child custody or alimony. We agree with the Supreme Court of Nevada, which reasoned in Mizner as follows:
... Still, it seems to us that the minimum contacts concept of in personam jurisdiction is peculiarly suited to matrimonial support cases. If such contacts are in fact present in the particular case before the court, then the extension of in personam jurisdiction beyond the borders of the forum state may prove to be a sensible step in solving some of the hardships arising from family separation. Courts must know by this time that strict application of the Pennoyer rule to family support cases has encouraged migratory divorce by offering a shield to a spouse wishing to avoid financial responsibility. The state of the matrimonial domicile has a deep interest in its citizens and a legitimate purpose in taking steps to preclude their impoverishment. Accordingly, it is our opinion that in personam jurisdiction *1088 may be acquired over a non-resident defendant in a divorce action by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exist sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy "traditional notions of fair play and substantial justice." (518 S.W.2d at 365, 366).
We agree with this logic, and, examining the record now before us, we conclude that the "traditional notions of fair play and substantial justice" requirement is met in appellant's minimum contacts with Mississippi. He married appellee under the laws of Mississippi, in Mississippi, which is their matrimonial domicile; they lived together for some period somewhere and they separated from each other in Mississippi; he abandoned her in Mississippi; when he left the state, he left her and their son in Mississippi; he sent support money for the child to appellee in Mississippi; this State had and has a deep interest in the marriage, separation, divorce and support of its citizens, including their children; he left his wife, and their child, a potential heir of his, in Mississippi and these being true, he left an important matter of unfinished business in Mississippi, the care, support and wellbeing of appellee and of their child.
The extension of the in personam jurisdiction of non-resident parties to support of children, in the general class of cases to which this belongs, is viewed as much needed and none too early.
We find no merit in this assignment.
Appellant has said, however, that requisite jurisdiction is not reflected in this case. He asserts that the bill of complaint does not allege (1) that the parties had resided in a marital relation with each other in this state thirty days, and (2) that complainant, the appellee, has continuously resided in this state after defendant, the appellant, became a non-resident.
The statute gives the jurisdiction where, among other necessary things, the parties had resided in a marital relationship with each other in this state for thirty days, and "if the complainant has continuously resided in this state after the defendant has become a nonresident." (Emphasis added). These prerequisites to availability of the right to in personam procedure are missing from the bill of complaint, are jurisdictional and without them no cause of action for child support relief is stated. Being absent, they are not supplied by the stipulation, if they may be, and we have the right and duty to notice them even if not made a ground of demurrer or other available pleading. Horton v. Horton, 213 Miss. 768, 57 So.2d 723 (1952).
This Court has held that long-arm statutes are to be strictly construed, being in derogation of the common law, and their provisions must be followed. State Farm Mutual Automobile Ins. Co. v. Stewart, 209 So.2d 438, 440 (Miss. 1968); Nationwide Mutual Ins. Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (1964); Rice v. McMullen, 207 Miss. 706, 43 So.2d 195 (1949).
It is concluded that the in personam decree of child support is not supported by the pleading, and must be set aside.
Accordingly, the cause is reversed, as to the in personam decree and it is set aside, and the cause is remanded for any desired proceedings, not inconsistent herewith.
REVERSED, IN PERSONAM DECREE SET ASIDE, AND CAUSE REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] We note that section 93-11-65 is also codified in that Chapter and is basically different from the "reciprocal act" in the use of it, for the relief it provides and affords an approach to child custody and support akin to the provisions of the statutes on divorce and alimony, section 93-5-1, et seq. We find of passing interest that section 93-11-65 was codified in Mississippi Code 1942 Annotated, as section 1263.5 under "Chancery Courts" although the reciprocal support statute had been adopted in 1954 and appeared in the Mississippi Code of 1942 Annotated as section 456.01, et seq.

Section 93-13-1 to XX-XX-XXX, inclusive, provide for guardians and their manner of appointment, duties, and termination. Beginning with section 93-13-211, are sections outlining the manner of achieving certain ends without compliance with the guardianship sections 93-13-1 to XX-XX-XXX, inclusive.
Sections 93-5-23, 93-11-1, 93-11-65 and 93-11-67 are all means to a common end, the maintenance of children, and are all equally available in factual situations for which they are tailored. (Emphasis added).