**In re the MARRIAGE OF Kathleen B. BREMER and Daniel J. Bremer.**

**Upon the Petition of Kathleen B. Bremer, a/k/a Kathleen B. Schulstrom, Petitioner-Appellant,**

**and Concerning Daniel J. Bremer, Respondent-Appellee.**

No. 3–68912.

Court of Appeals of Iowa.

April 8, 1983.

Ken Sojka of Buckley & Sojka, Harlan, for petitioner-appellant.

Robert Kohorst of Louis, Moore, Kohorst, Louis, Murtaugh & Kohorst, Harlan, for respondent-appellee.

Considered by OXBERGER, C.J., and SNELL and JOHNSON, JJ.

OXBERGER, Chief Judge.

The mother filed a petition in Iowa seeking to enforce her child custody rights and other rights under a Wisconsin divorce decree. The Iowa court sustained the father's special appearance and held that Wisconsin rather than Iowa had jurisdiction over the case. The mother has appealed. She contends the Uniform Child Custody Jurisdiction Act, Iowa Code chapter 598A, gives Iowa jurisdiction. We affirm.

The parties' marriage was dissolved by a Wisconsin decree filed in 1979. The Wisconsin decree placed the parties' four minor children in Kathleen's custody.

In 1980, Kathleen and the children moved to Minneapolis, Minnesota. In June, 1981, while Kathleen was living in Minnesota, Daniel refused to return two of the children from visitation. Those two children, both boys, have lived with Daniel in Wisconsin since that time.

At the end of June, 1981, a few weeks after Daniel's refusal to return the boys, Kathleen moved to Shelby County, Iowa, along with her new husband and the two children remaining in her custody.

In May of 1982, Kathleen filed the present petition in Shelby County, Iowa, asking the court to adopt the Wisconsin decree and to give it the same force and effect as an Iowa decree. She then asked the court to return the boys to her custody and to modify the visitation provisions of the Wisconsin decree. She also asked for relief concerning Daniel's alleged arrearages in child support and property settlement payments.

Daniel filed a special appearance alleging that Wisconsin rather than Iowa had jurisdiction over the case. Kathleen responded by arguing that Iowa Code chapter 598A, the Uniform Child Custody Jurisdiction Act, gave the Iowa court jurisdiction over the case.

The trial court sustained Daniel's special appearance, holding that Daniel had no "minimum contacts" with Iowa sufficient to submit him to the jurisdiction of Iowa courts. The court also concluded that chapter 598A did not confer jurisdiction on the Iowa court. Addressing only one of the four alternative grounds for jurisdiction under section 598A.3, the court found that Iowa is not and had never been the "home state" of the two boys. Iowa Code § 598A.3(1)(a) (1981).

Kathleen has appealed from the trial court's order sustaining Daniel's special ap-

pearance. She contends that the Iowa court should have accepted jurisdiction under section 598A.3(1)(b), which gives Iowa courts jurisdiction if Iowa is not clearly the child's "home state" but if

> [i]t is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

In addition, Kathleen argues that the Iowa court could have accepted jurisdiction under section 598A.3(1)(a), the jurisdictional alternative expressly rejected by the trial court. That subsection gives Iowa courts jurisdiction if

> [t]his state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state.

Kathleen acknowledges that the two boys have never actually lived in Iowa. However, she asserts that Iowa would have become the boys' home state in June, 1981, but for Daniel's wrongful retention of them; and that under these unusual circumstances, the children's "home state" is the domicile of their lawful custodian rather than the state of their physical residence.

It is important to note that Daniel was served with original notice of his action in Wisconsin, that he resides in Wisconsin, and that he has no property in Iowa. In addition, the act of which Kathleen complains, namely, retention of the two children after a visit with their father, took place before Kathleen moved to Iowa.

Daniel's contacts with the state of Iowa are so minimal as to be imperceptible. The courts of the state of Iowa have no jurisdiction over him. So far as we can determine, neither Daniel nor the children have ever been in the state of Iowa.

The principles that determine whether the state of Iowa has jurisdiction over Daniel were enunciated by the United States Supreme Court in *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132, (1978). In *Kulko,* the Supreme Court found that the courts of California could not exercise in personam jurisdiction over a nonresident, nondomiciliary parent of minor children who were domiciled within the state. The Court held that the exercise of such jurisdiction would violate the due process clause of the 14th amendment.

The contacts that the husband had with California in *Kulko* were more substantial than any of which we have evidence in the instant case. The husband in *Kulko* had stopped in California briefly on two occasions many years before. On one of those occasions, he and the wife were married in California. They moved to New York and were domiciled there until their separation and divorce. Moreover, the father had agreed to permit his children to visit their mother in California for three months each year, and the children were in fact sent to California for visitations with their mother. One of the Kulko children had decided to live with their mother and was voluntarily sent to California by the father. The other was flown to California by his mother and took up residence there with his mother and sister. The mother then attempted to modify the divorce decree so as to win full custody of the children and increase the father's child support obligations. The father appeared specially and moved to quash service of the summons on the ground that he was not a resident of California and lacked sufficient minimum contacts with the state to warrant the state's assertion of personal jurisdiction over him. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The court noted that the *International Shoe* test of "reasonableness" for "minimum contacts"

was "not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko,* 436 U.S. at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141. The court concluded in that case: "We cannot accept the proposition that appellant's acquiescence in Ilsa's desire to live with her mother conferred jurisdiction over appellant in the California courts in this action. A father who agrees, in the interest of family harmony, and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have 'purposefully availed himself' of the 'benefits and protections' of California's laws." *Id.,* 436 U.S. at 94, 98 S.Ct. at 1698, 56 L.Ed.2d at 142–43.

> Moreover, the Court concluded that
> basic considerations of fairness point decisively in favor of appellant's State of domicile as the proper forum for adjudication of this case, whatever the merits of appellee's claim. It is appellant who has remained in the State of the marital domicile, whereas it is appellee who has moved across the continent [citations]. Appellant has at all times resided in New York State, and, until the separation and appellee's move to California, his entire family has resided there as well. As noted above appellant did no more than acquiesce in the stated preference of one of his children to live with her mother in California. This single act is surely not one that a reasonable parent would expect to result in the substantial burden and personal strain of litigating a child-support suit in a forum 3000 miles away, and we therefore see no basis on which it can be said that appellant could reasonably have anticipated being "haled before a [California] court," [citations]. To make jurisdiction in a case such as this turn on whether appellant bought his daughter her ticket or instead unsuccessfully sought to prevent her departure would impose an unreasonable burden on family relations, and one wholly unjustified by the "quality and nature" of appellant's activities in or relating to the State of California. [citation].

*Id.,* 436 U.S. at 97, 98 S.Ct. 1699–1700, 56 L.Ed.2d at 144–45.

The contacts that Daniel and his children have had with the state of Iowa do not begin to rise to the level of those which Kulko and his children had with the State of California. Clearly, if there were insufficient contacts between Kulko and the State of California for that state to have personal jurisdiction over him, *a fortiori* there were insufficient minimal contacts between Daniel, his children, and the state of Iowa to confer personal jurisdiction over him and this state.

The trial court was correct in sustaining the special appearance, and we therefore affirm.

AFFIRMED.