540 So.2d 1334 (1989)
Melinda S. Allen CARPENTER
v.
Edward E. ALLEN.
No. 58172.
Supreme Court of Mississippi.
March 15, 1989.
David Ringer, Hazel Cunningham, Ringer & Cunningham, Florence, for appellant.
Anselm J. McLaurin, McLaurin & McLaurin, Brandon, for appellee.
En Banc,
ROBERTSON, Justice, for the Court:

I.
The dispositive issue in this case arises by reason of the Uniform Child Custody *1335 Jurisdiction Act and transfer thereunder of an Ohio child custody matter to a chancery court in this state. The defendant father, though subject to in personam jurisdiction in Ohio, has no minimum contacts with Mississippi and objected, when sued regarding his child support obligations, to in personam jurisdiction in this state. The Chancery Court agreed and granted his motion to dismiss. Writing a variation on a theme by Kulko, we affirm.

II.
Melinda S. Allen Carpenter (Carpenter), formerly Melinda S. Allen, is an adult resident citizen of Rankin County, Mississippi. Carpenter was the plaintiff below and is the appellant here. Edward E. Allen (Allen) is an adult resident citizen of Fairhope, Alabama. Allen was the defendant below and is the appellee here.
Carpenter and Allen were formerly married to each other and lived in the state of Ohio. One child was born to the marriage, Diane M. Allen, whose date of birth is July 17, 1971. On November 29, 1974, the parties were divorced by a judgment of the Court of Common Pleas, Franklin County, Ohio. That judgment of divorce placed custody of the child, Diane, with Carpenter and ordered that Allen pay child support in the amount of $25.00 per week.
Carpenter has since remarried and has moved to Rankin County, Mississippi, where she lives with her new husband and, as well, the child, Diane, who is now seventeen years of age.
Carpenter suggests that Allen has fallen into arrears in his child support obligations. On September 2, 1986, she procured a judgment of the Court of Common Pleas, Franklin County, Ohio, transferring jurisdiction over this case to the Chancery Court of Rankin County, Mississippi, and on October 6, 1986, the Chancery Court entered its judgment accepting jurisdiction,[1] all in accordance with the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.),[2] Miss. Code Ann. §§ 93-23-1, et seq. (Supp. 1988).
On January 8, 1987, Carpenter commenced the present proceedings by filing in the Chancery Court of Rankin County a complaint to modify judgment of divorce and for contempt citation. In her complaint, Carpenter sought an order increasing Allen's child support obligations to $200.00 per month  approximately double its present level, and that, in addition, Allen pay Diane's college tuition expenses. In addition, by reason of an alleged $325.00 arrearage, Carpenter demanded a monetary judgment against Allen and an order that he be adjudged in contempt and imprisoned until he purge himself of his contempt.
In due course, Allen moved to dismiss, see Rule 12(b)(2), Miss.R.Civ.P., arguing that he could not be subjected to in personam jurisdiction in the state of Mississippi consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. On March 13, 1987, the Chancery Court entered its order granting the motion and dismissed Carpenter's complaint "for lack of personal jurisdiction over the defendant." This appeal has followed.

III.
We have accepted our obligation to respect and enforce a non-resident father's federal due process rights, see, Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), when he is sued in this state regarding his child support obligations. Noble v. Noble, 502 So.2d 317, 319-20 (Miss. 1987). In Noble the defendant father had claimed Mississippi as his domicile from 1956 until he retired from the Armed Forces in 1984 and moved to South Carolina. On those facts Noble *1336 quite correctly held the father constitutionally amenable to suit in Mississippi.
There is nothing in the brief record before us that suggests that Edward E. Allen has ever so much as set foot in the State of Mississippi. It may not fairly be said from this record that Allen has purposefully availed himself of the benefits of the laws of the state of Mississippi or that he derives personal or commercial benefit from his daughter's presence in Mississippi. Ordinarily where such is the case, we would be content to cite Kulko and affirm, for the fact that Mississippi has such contacts with the matter that its substantive law should apply to Carpenter's child support modification action does not render Allen, a citizen of Alabama, constitutionally amenable to suit here. See Boardman v. United Services Automobile Assn., 470 So.2d 1024, 1035 (Miss. 1985).
By reason of the advent of the U.C.C.J.A., more need be said. While residents of Ohio, Carpenter and, more importantly, Allen became subject to in personam jurisdiction in the Court of Common Pleas of Franklin County, Ohio, in Case No. 74DR-02-1125. That court entered its judgment of divorce on October 18, 1974. Apparently Ohio law provides that once parties are before the court in a domestic relations matter and a divorce is granted, the court "maintains continuing jurisdiction over the parties." See Paragraph 1 of Judgment dated September 2, 1986, in Allen v. Allen, Court of Common Pleas, Franklin County, Ohio, No. 74DR-02-1125.[3] In that judgment, the Ohio court, acting pursuant to the U.C.C.J.A., transferred "jurisdiction over the subject matter and parties in Cause No. 74DR-02-1125 to the Chancery Court of Rankin County, Mississippi." [Emphasis added] Our question is whether this changes the result Kulko would ordinarily decree.
To begin with, the U.C.C.J.A. expressly excludes from its coverage matters "relating to child support or any other monetary obligations of any person." Miss. Code Ann. § 93-23-3(c) (Supp. 1988); Burrill v. Sturm, 490 So.2d 6, 8 (Ala.App. 1986); Kioukis v. Kioukis, 185 Conn. 249, 253-54, 440 A.2d 894, 896 (1981) (citing identically worded section of U.C.C.J.A. as enacted in Connecticut); Lee v. DeShaney, 457 N.E.2d 604, 607 (Ind. App. 1983) (same; Indiana); Warwick v. Gluck, 12 Kan. App.2d 563, 751 P.2d 1042, 1044 (1988) (same; Kansas).
More fundamentally, our answer may be gleaned from the indubitable premise that federal constitutional imperatives prevail over rights and authority emanating from subordinate sources and forms of law. Neither Ohio nor Mississippi, nor the legislatures or courts of either, have the power to abridge rights secured to Allen by the Due Process Clause of the Fourteenth Amendment. The fact that at one time Allen lived in Ohio and became subject to in personam jurisdiction in a court of that state is of no consequence here, as our inquiry is whether Allen is constitutionally amenable to in personam jurisdiction in Mississippi, not Ohio. Indeed, for purposes of considering Allen's due process point, the courts of this state are constitutionally enjoined to proceed as though the Ohio proceedings had never occurred.
Courts of other states facing the in personam jurisdiction questions in legally analogous circumstances have reached the same result we this day decree. Burrill v. Sturm, 490 So.2d 6 (Ala. Civ. App. 1986) (parties divorced in Pennsylvania; mother and child moved to Alabama; father had moved to Maryland); Kumar v. Superior Court of Santa Clara County, 32 Cal.3d 689, 652 P.2d 1003, 1012-13, 186 Cal. Rptr. 772, 781-82 (1982) (parties divorced in New York; mother and child moved to California and registered the New York custody judgment in California); In re Marriage of Schuham, 120 Ill. App.3d 339, 76 Ill.Dec. 159, 458 N.E.2d 559 (1983) (parties divorced in Missouri; mother and children moved to Illinois and registered the Missouri custody judgment in Illinois); In re Marriage of Bremer, 334 N.W.2d 356 (Iowa App. 1983) *1337 (parties divorced in Wisconsin; mother moved to Iowa with two of four children and registered Wisconsin custody judgment in Iowa); Ferguson v. Ferguson, 411 N.W.2d 238 (Minn.App. 1987) (parties divorced in Montana; mother and children moved to Minnesota); Perry v. Ponder, 604 S.W.2d 306, 312-13, 322 (Tex.Civ.App. 1980) (parties divorced in Alabama; mother and child moved to Texas).
To be sure, in personam jurisdiction and constitutional amenability thereto partake of personal rights which may be waived if not timely asserted. See Rule 12(h)(1), Miss.R.Civ.P.; Karenina By Vronsky v. Presley, 526 So.2d 518, 523 (Miss. 1988); O'Neill v. O'Neill, 515 So.2d 1208, 1211-12 (Miss. 1987); Brown v. Brown, 493 So.2d 961, 963 (Miss. 1986). In some circumstances such waiver may be given in advance in the sense that a person may before suit consent to in personam jurisdiction in a state where he would not otherwise be amenable thereto, see Smith v. Those Certain Insurance Companies, Etc., 132 Ariz. 371, 373, 645 P.2d 1285, 1287 (App. 1982); International Collection Service, Inc. v. Gibbs, 147 Vt. 105, 510 A.2d 1325, 1327 (1986), and in connection therewith, we have reviewed the record before us to see if prior to the Ohio judgment of September 2, 1986, Allen overtly expressed his consent to in personam jurisdiction in Mississippi. The record is silent on the point. Indeed, the Ohio judgment transferring jurisdiction entered September 2, 1986, does not even recite or find that Allen, who by that time had long been a resident of Alabama, was even given notice of the pendency of the transfer proceedings.
Our action this day, of course, is without prejudice to Carpenter's right to pursue either of two other courses: (1) filing suit in the appropriate Alabama court, or (2) proceeding under the Uniform Reciprocal Enforcement of Support Act.[4]
AFFIRMED.
ROY NOBLE LEE, C.J., and SULLIVAN, ANDERSON and BLASS, JJ., concur.
PRATHER, J., HAWKINS and DAN M. LEE, P.JJ., and PITTMAN, J., dissent by separate written opinion.
PRATHER, Justice, dissenting:
There is a national crisis in child support enforcement. Although domestic relations is a field within the subject matter jurisdiction of the several states, there has been a federalization of this field of law because of the ever escalating cost of child support payments by the federal government in its Aid to Families With Dependent Children program (AFDC), food stamp programs, and Medicaid expenditures. Because of this federal interest, the federal government has passed legislation to encourage the states in their child support enforcement systems. Many uniform acts were promoted in the various states with the resulting adoption of the Uniform Reciprocal Enforcement of Support Act, (URESA), the Uniform Child Custody Jurisdiction Act (UCCJA) and others. As a condition upon the states' future receipt of federal financial aid in welfare funds, the states were required to enact child support enforcement legislation such as Miss. Code Ann. § 43-19-31 (Supp. 1988), as amended, and other legislation to help alleviate the chaos in child support enforcement. The legislation applies to all minors whether they are receiving welfare funds or not.

I.
Today's decision is a child support case and presents a factual situation that warrants relief from the Mississippi courts.
Under the facts of the present case, the Mississippi courts have given full faith and credit to an Ohio decree regarding support of a minor child by the acceptance of the transfer of jurisdiction from the Ohio court. United States Constitution, Art. 4, *1338 § 1. Full faith and credit requires that this state respect the determination of the facts existing when the original order was rendered. However, it is a modifiable support decree and is entitled to modification on a showing of changed circumstances. As the Ohio court obtained personal jurisdiction in the original action, that court retained personal jurisdiction to modify or enforce support obligations provided in the decree and the Ohio court's in personam jurisdiction continued and was not lost by the father's removal from the state. That in personam jurisdiction was transferred to Mississippi and accepted here. On a supplemental proceeding to enforce support obligations, the Ohio order is entitled to full faith and credit.
There is a case from another jurisdiction which is directly on point for the issues before us now. In Hazen and Henderson, 74 Or. App. 322, 702 P.2d 1143 (1985), the parties to the litigation were divorced in the State of Washington in 1973. The mother was awarded custody of the child, and the father was ordered to pay child support. When the subsequent contempt lawsuit was filed, the father was a resident of Ohio and the mother and child were residents of the State of Oregon and had been for several years. Id. 702 P.2d at 1145.
The mother sought an increase in child support payments and brought the action in the State of Oregon. The father was personally served in the State of Ohio and he appeared specially and objected to jurisdiction in Oregon. The trial court held that it had in personam jurisdiction over him and the Oregon Court of Appeals agreed. Id. 702 P.2d at 1145. Several other facts in this case parallel those of our case.
In Hazen, the father had left Washington, the state where the couple had married and lived, and moved to Ohio, a state with which the mother and child had no contacts. This is similar to our case because Edward Allen left Ohio, where the couple was divorced, and moved to Alabama. The record reveals no contacts between the mother and child and the State of Alabama. In Hazen the father paid regular child support to the mother in the State of Oregon just as Edward Allen does to Melinda Allen in the State of Mississippi. Any communications concerning the child and visitation in Hazen took place in the State of Oregon. The record in our case does not reveal any contacts between the father and his child or any visitation; however, according to the divorce and custody decree any visitation by the father must take place where the mother and child are located, i.e., in Mississippi.
The Hazen Court took note of three suggestions by the father as to how the mother should go about seeking a modification of the child support payments. The first suggestion made by the father was that the mother seek litigation of the matter in the State of Washington, the state where the divorce decree was entered; in our case this would be the State of Ohio. The Hazen Court found the father's suggestion regarding the State of Washington to be unreasonable:
Assuming that state's courts have continuing jurisdiction over the parties for these purposes, the fact is that the parties and their child have had no contact with Washington state for almost a decade. Washington is a forum non conveniens; its courts may decline to exercise their jurisdiction, because there is no legitimate reason for the case to be brought there. Further, presentation of the case in Washington's courts could prove unduly expensive for both the parties and their witnesses, because of its distance from them.
Id. 702 P.2d at 1147. Each of these same factors is present in our case with an additional caveat  as noted earlier, jurisdiction over this entire cause had been transferred by mutual consent decree from the courts of the State of Ohio to the Chancery Court of Rankin County.
The father's next suggestion in Hazen was to go to Ohio to try the case. This would correspond in our case to litigating the issue in the State of Alabama. The Hazen Court had this to say about trying the case in Ohio:

*1339 With regard to mother going to Ohio to proceed directly against father there, that would merely shift the burden from him to her and the child. We cannot perceive that a rule founded on reasonableness and fairness would dictate that a custodial parent and child bear the burden of this litigation and its attendant inconvenience rather than the non-custodial parent.
Id. Courts must always be careful to act in the best interest of the child, and it is difficult for me to see how trying the case in Alabama would be in the best interest of the child.
The father's final suggestion in Hazen was that the mother proceed under the Uniform Reciprocal Enforcement Support Act (URESA). The Court in Hazen noted that the mother's remedies under URESA were in addition to and not in substitution of any other remedies, a fact already alluded to earlier in this opinion. See Fliter v. Fliter, 383 So.2d 1084 (Miss. 1980). After then applying the familiar "minimum contacts" analysis, the Oregon Court of Appeals held that the case was properly triable in the State of Oregon. Id. 702 P.2d at 1147.

II.
The majority relies upon Kulko v. Superior Court, supra, and its progeny, as the basis upon which it concludes that in personam jurisdiction does not lie. In my view Kulko is entirely and factually distinguishable from the instant case.
In Kulko, the mother brought an original proceeding to gain child custody and support in California, and she "sought to establish a Haitian decree as a California judgment." 436 U.S. at 84, 98 S.Ct. at 1692, 56 L.Ed.2d at 138. This case, Allen, represents a full faith and credit acknowledgment of an existing Ohio decree; it is not an original proceeding as in Kulko. Mr. Allen conceded jurisdiction at the time of divorce in Ohio and does not now assert that the Ohio court was without jurisdiction to enter the original decree. The instant case represents a transfer of that modifiable support order from Ohio to Mississippi on a full faith and credit basis, and this case represents a supplemental proceeding incidental to the original suit. The Ohio court had continuing jurisdiction in the original suit; so does the Mississippi Chancery Court. Also distinguishable is the fact that in Kulko, the defendant father had maintained continuously his New York residence; both the Allens have left Ohio.
Even the Alabama case of Burrill v. Sturm, cited by the majority, acknowledged that in a support enforcement proceeding, the non-resident father could be required to defend a support modification by the resident mother where the father's only contact with Alabama was the fact of the children's residence there. Burrill, supra at 8.
I conclude that Kulko does not address the full faith and credit issue that is present in this situation, nor the modifiable support decree. The modifiable support decree question has not been settled as a matter of federal constitutional law. I respectfully would reverse the chancellor on his ruling that Mississippi lacked in personam jurisdiction.

III.
At the very least I would vacate this chancery decision and remand for an evidentiary hearing on the in personam jurisdictional issue. Hobbs v. Hobbs, 508 So.2d 677 (Miss. 1987). There was no evidence offered or stipulation of facts given on the defendant's motion to dismiss for lack of in personam jurisdiction  at least the appeal record contains none  and this Court could better address this appeal with more than the bare facts of the pleadings. Such a hearing could develop, as the majority notes, whether Allen consented to the transfer of the case to Mississippi from the Ohio court. Or, such a hearing could develop the place of their marriage and early residence, Miss. Code Ann. § 93-11-67 (1972) or many other facts to qualify for minimum contact with Mississippi and to satisfy due process as the majority contends. Such a factual hearing could develop the fact that more than unilateral activity *1340 of this mother and child connect this father with the forum state.

IV.
Mississippi has a substantial interest in facilitating child support actions on behalf of resident children. The interests of the mother and child in proceeding in this state must also be considered.
I would reverse.
HAWKINS and DAN M. LEE, P.JJ., and PITTMAN, J., join this dissent.
NOTES
[1] Without question, Mississippi is Diane's "home state", Miss. Code Ann. § 93-23-3(f) (Supp. 1988). The Chancery Court of Rankin County has jurisdiction over matters pertaining to Diane's custody. Miss. Code Ann. § 93-23-5(1)(a) and (b) (Supp. 1988).
[2] The U.C.C.J.A. has also been enacted in Ohio. See Ohio Rev.Code §§ 3109.21, et seq. (1980). For the Official Text (1968) of the U.C.C.J.A., together with Comments and Annotations, see 9 U.L.A. 123, et seq. (1988).
[3] The Ohio rule appears to be identical with our continuing jurisdiction rule in domestic relations cases. See Covington v. Covington, 459 So.2d 780, 782 (Miss. 1984); see also McNally v. McNally, 516 So.2d 499, 502 (Miss. 1987).
[4] The U.R.E.S.A. has been enacted in Mississippi, see Miss. Code Ann. §§ 93-11-1, et seq. (1972 and Supp. 1988), and in Alabama, see Ala. Code §§ 30-4-80, et seq. (1975), concerning which see Kulko, 436 U.S. at 99-100, 98 S.Ct. at 1700-01, 56 L.Ed.2d at 145. The Mississippi-Alabama experience under the U.R.E.S.A. is reflected in Hailey v. Holden, 457 So.2d 947 (Miss. 1984); Ex Parte O'Neill, 420 So.2d 264, 266 (Ala. 1982); and Howard v. Howard, 191 So.2d 528 (Miss. 1966).