630 So.2d 331 (1993)
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES
v.
Steven Alan MARQUIS.
No. 92-CA-0817.
Supreme Court of Mississippi.
November 24, 1993.
Rehearing Denied February 10, 1994.
Byron Hughes, Jackson, for appellant.
Benjamin E. Griffith, Griffith & Griffith, Cleveland, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
PRATHER, Presiding Justice, for the Court:
The issue in this appeal is whether a non-resident custodial parent who initiates a Uniform Reciprocal Enforcement of Support Act (URESA) action in a foreign jurisdiction submits to personal jurisdiction in the Mississippi Chancery Court as the responding state for a contest of a child custody order of the *332 foreign jurisdiction. This Court holds that custody orders and visitation rights are not contestable under a URESA action pursuant to recent Mississippi legislation.

I. FACTUAL BACKGROUND
Elizabeth Ann and Steven Marquis were married on June 11, 1977, in Bolivar County, Mississippi. To this marriage, two children were born. Michelle A. Marquis was born on July 14, 1979, in Germany, while her father was in the military service, and Jeremy A. Marquis was born in Mississippi on September 3, 1985. In October, 1987, the family moved to Colorado, where the parents separated; a temporary support order was entered in June, 1989. A final decree of divorce on personal service was entered on April 18, 1990 in El Paso County, Colorado, granting joint custody of the children to both parents, but with Elizabeth named as the "residential custodian." Elizabeth was granted a monetary judgment for Steven's non-payment of temporary child support in the amount of $2,227, and Steven was ordered to pay $264 monthly for the two children, beginning May 1, 1990, and to continue until further orders of the court. Extensive visitation rights were granted to Steven, with provision made for the children's travel expenses for the summer visitations. Additionally, the Court prorated the family debts between the parties and divided the marital personalty. The court retained jurisdiction over all items relating to the dissolution of the marriage as was provided for under Colorado law.
On September 17, 1991, Elizabeth Marquis filed a URESA action in the District Court of Arapahoe County, Colorado, seeking payment of a child support arrearage of $5,550 and attaching to the complaint her "General Testimony." Her testimony of September, 1991, alleged child support obligations and payments as follows:

 STEVEN'S BALANCE
 DATE AMOUNT ORDERED PAYMENTS ARREARAGE
 April 1990 Judgment $2,227 -0- $2,227
 May-Dec. 1990 8 mos. @$264 $2,112 $195 $4,144
 Jan.-Sept. 1991 9 mos. @$254 $2,376 $970 $5,550

Also attached to Elizabeth's General Testimony was an "Agreement" dated September 24, 1990, signed by Steven Marquis before a Mississippi notary public and mailed to Elizabeth for her concurrence. The content of the Agreement was as follows:
I Elizabeth Anne Marquis, do agree to the terms set by Steven Alan Marquis, on this date September 24, 1990. All previous child support has been paid in full, due to Steven Alan Marquis paying bank note payments for Elizabeth Anne Marquis from divorce agreement. Total payment in the amount of $2400.00.
Since child support payments were set according to ratio of salaries, and the amount of bank note payments, I Steven Alan Marquis am dropping the amount of my monthly child support payments from $264.00 per month to $109.64 per month till the remainder of the notes are paid off. If this is not in agreement with you (Elizabeth Anne Marquis), then I (Steven Alan Marquis) will take it back to the Colorado Judge to review the case.
Please sign and return copy by October 3, 1990. If not received by October 3, 1990 the Colorado Court will be notified.
Elizabeth refused to sign the agreement, but notified the Colorado Court of Steven's request at the time of filing the URESA action. Elizabeth's testimony revealed her gross monthly income to be $1,740 with mandatory deductions of $607 and no public assistance support from Colorado. She sought collection of the $5550 arrearage through the URESA action.

II. MISSISSIPPI/COLORADO PROCEDURAL HISTORY
Steve was notified in Mississippi of the URESA action on June 3, 1992. He filed a *333 general denial to its allegations and asserted the affirmative defense of his alleged compliance with the Colorado court order, of Elizabeth's alleged failure to comply with the divorce decree, and of her alleged failure to care for the children. He asked by counterclaim for a modification of child custody. The assertion of Mississippi's jurisdiction to entertain a custody modification was based on Elizabeth's having filed the URESA action for support and on the children's having "significant connection with this state." The counterclaim asserted that "the children are or will soon be physically present in the State of Mississippi...." The pleadings make assertions of an emergency situation dating back to 1987, a time prior to the divorce.
As to the child support question, Steven claimed compliance with the Colorado order and requested (1) credit and equitable reduction or abatement for summer visitation periods when he supported the children, (2) "full credit for all support payments and expenses incurred while said children were in his actual physical custody," and (3) credit for payments made by him on Mississippi bank loans that the Colorado court ordered Elizabeth to pay, totaling $1,915.74. Total credits claimed by Steven totaled to within $816 of the claimed arrearage of $5,550, and the amount of $816 was deposited by Steven into the registry of the Mississippi Chancery Court.
Elizabeth Marquis was represented in the Mississippi chancery court proceeding, pursuant to the URESA statute, by the Mississippi Department of Human Services (DHS). DHS filed an answer to Steven's counterclaim for custody modification asserting an appearance on behalf of Elizabeth on the child support issue only. DHS asserted the lack of process on Elizabeth for a custody modification hearing and lack of DHS' authority to represent Elizabeth on any issue other than support.
The chancery court entered an order on July 2, 1992, setting a hearing on Elizabeth's support complaint and Steven's counterclaim for custody modification under the Uniform Child Custody Jurisdictional Act (UCCJA) for July 16, 1992. An order was also entered by the chancellor directing Elizabeth to appear personally with the children on July 16, 1992, for the hearing under M.C.A. § 93-23-9 (UCCJA) and to submit to a telephone deposition on July 14, 1992.
The proceedings of this litigation moved again to Colorado when Elizabeth filed a second action in the District Court for El Paso County, requesting the Colorado Court to issue a restraining order preventing her telephone deposition, the litigation of the custody issue in the Mississippi chancery court, and the removal of the children from Colorado. Steven then filed, in Mississippi, a petition pursuant to the UCCJA requesting the Mississippi chancellor to contact the Colorado judge in order that Colorado might give full faith and credit to the Mississippi order asserting jurisdiction of the parties and of the subject matter. DHS filed an updated motion seeking a contempt order for non-payment of support, as of June 30, 1992, in the amount of $5,153.00.
Three final orders were entered on July 16, 1992. The first order requested the Colorado court to abstain from further action and hold in abeyance any motions filed by Elizabeth in the Colorado court as Mississippi had asserted jurisdiction over the custody issue. There is no recital as to the physical presence of Elizabeth or the children in Mississippi in this order.[1] The second final judgment granted the counterclaim of Steven, modifying the Colorado decree as to custody of the two minor children and granting custody to their father. The court found an emergency situation existed as to the children's being "subject[ed] to mistreatment, abuse and neglect on the part of the [Elizabeth]."
The third order dismissed Elizabeth's complaint for support arrearage, contempt citation, and amended motion for contempt. The order provided Steven with an "equitable adjustment and offset" on all sums for which he sought credit, including the $816 paid into the court's registry. The $816 was directed to be repaid to Steven.
*334 A request by DHS for supersedeas of the Mississippi order was denied by the chancery court on August 6, 1992.[2]

III. ANALYSIS
The sole issue in this appeal is whether Elizabeth submitted to in personam jurisdiction in Mississippi, for purposes of Steven's counterclaim for modification of custody under the UCCJA statute, by her initiation of a child support claim under URESA in the Colorado court. This Court will not hesitate to reverse a chancellor when his findings are manifestly wrong or when he has applied an erroneous legal standard. Tilley v. Tilley, 610 So.2d 348, 351 (Miss. 1992); Faries v. Faries, 607 So.2d 1204, 1208 (Miss. 1992).
The record undisputedly shows that the custody question was addressed initially by the Colorado court at a time when the family lived in Colorado and that the Colorado court had personal jurisdiction of this family. The divorce decree reserved continuing jurisdiction over the marital issues in the Colorado court. The children have continually resided in Colorado with their mother since the divorce, but have visited their father in Mississippi. The mother's Mississippi attorney (DHS' attorney) had preserved the personal jurisdiction issue by pleadings timely filed. The "home state" of the children is Colorado, although the father asserts an emergency situation with regard to the children's best welfare. There is nothing in the record to suggest that the mother has submitted to the personal jurisdiction of the Mississippi courts except the initiation of her URESA action in Colorado.
Our uniform acts were enacted to give authority to Mississippi courts to address custody and support suits. The UCCJA, § 93-23-1 et seq.,[3] deals with custody and excludes support actions (§ 93-23-3(c)), while the URESA act, § 93-11-1 et seq., addresses the duty of support (§ 93-11-5(6)) and (§ 93-11-15). There is also the class of federal constitutional mandates that covers these uniform actions to insure rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Carpenter v. Allen, 540 So.2d 1334 (Miss. 1989) (the Mississippi court lacked personal jurisdiction over the non-resident father in a UCCJA suit).
Miss. Code Ann. § 93-11-15 has enunciated what duties are enforceable in Mississippi under a URESA suit and clearly provides for an action for support. Effective July 2, 1993, Mississippi amended § 93-11-15 to clarify, if any clarification was needed, that URESA was intended to address support enforcement only. The amendment states that "[a]wards of custody and orders regarding visitation rights are not contestable under the provisions of the law." Miss. Code Ann. § 93-11-15 (Supp. 1993).
This Court has addressed the issue of retroactivity of statutory amendments on many occasions. In Estate of Stamper, 607 So.2d 1141, 1148-49 (Miss. 1992), this Court held that "prohibitions on ex post facto laws do not preclude the Legislature (or this Court) giving retroactive effect to new enabling, power-conferring rules, or rules of procedure or practice ... [W]e have on occasion looked to post-event legislation to clarify the pre-enactment content of the law ... When we do this, of course, our questions ordinarily are whether we offend any vested right ... or disappoint reasonable reliance." In the instant case, Steven had no vested right nor reason to rely on URESA, as it read prior to the 1993 amendment, as conferring jurisdiction to entertain a suit for modification of custody.
Additionally, in Bell v. Mitchell, 592 So.2d 528, 532 (Miss. 1991), this Court held "[w]hen cases are in the bosom of this Court and *335 there is involved a statute that is modified prior to a final decision of this Court, we take that modification into consideration." See also, Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc., 528 So.2d 804, 809 (Miss. 1988). "In proper cases an amendment may be viewed as a clarification of the former statute. As such it aids us in assigning meaning to the prior law." See also 1 A Norman J. Singer, Statutes and Statutory Construction § 22.36 (1985) ("when the purpose of the amendment is to clarify the meaning of an earlier enactment ... provisions added by the amendment that affect procedural rights  legal remedies  are construed to apply to all cases pending at the time of its enactment ... whether the substantive rights sought to be enforced accrued prior or subsequent to the amendment, unless a vested right would be impaired by it.")
It is true that in personam jurisdiction and constitutional amenability may be waived. Carpenter v. Allen, 540 So.2d at 1337. However, there is nothing in this record that suggests any waiver by Elizabeth; in fact, the record shows unequivocally the opposite. This Court holds that the custody issue cannot be contested within the filing of a URESA action. Miss. Code Ann. § 93-11-15 (Supp. 1993).
The next question to be addressed is whether Elizabeth waived in personam jurisdiction to the UCCJA counterclaim. As noted earlier, in personam jurisdiction was timely raised by Elizabeth. No personal appearance by Elizabeth was made; no pleadings on the custody issues were filed, except to contest jurisdiction. The record shows a reservation by the Colorado Court of jurisdiction over "all issues relating to the marital dissolution." Colorado's reservation of jurisdiction was acknowledged by Steven when he signed the "Agreement" by which he sought credit for the bank loan payments. The Colorado Court properly held that the "home state" of these children was Colorado, where they had lived continuously since 1987. The visitation of the children with their father in Mississippi does not change the "home state" to Mississippi. This Court holds that there was no in personam jurisdiction over Elizabeth in the child custody issue raised by Steven's counterclaim under the UCCJA, nor a waiver of the same by Elizabeth. Therefore, this Court reverses and renders the chancery court judgment, awarding custody of the Marquis' children to the mother.

IV. SUPPORT
The chancery court ordered attendance of Elizabeth at the July 16, 1992, hearing on both the complaint and counterclaim. She did not attend. There was no record of the proceeding, but after this appeal the chancellor filed a Finding of Facts and Conclusion of Law. The court ordered all credits claimed by Steven to be granted and returned to him his admitted arrearage of $816. The complaint for support and motion for contempt were dismissed with prejudice.
The status of the support aspect of this proceeding gives this Court concern. Elizabeth was by court order directed to appear and bring the children to Mississippi at a time when she was contesting in personam jurisdiction over her in the custody suit. The documentary evidence supports the reservation by the Colorado court of continuing jurisdiction "over all items relating to dissolution of marriage action." It appears that Colorado has a continuing jurisdiction rule in domestic relations case similar to this state's rule. McNally v. McNally, 516 So.2d 499, 502 (Miss. 1987); Covington v. Covington, 459 So.2d 780, 782 (Miss. 1984).
The Colorado court's reservation of jurisdiction over marital issues was acknowledged by Steven when he signed his "Agreement" and asked Elizabeth to credit his payment of her bank loan payments against his child support arrearage. The agreement recited that if Elizabeth did not agree, "then (Steven Alan Marquis) will take it back to the Colorado Judge to review the case."
It is apparent to this Court that the determination of credits or abatements were reserved by the Colorado court in its reservation of continuing jurisdiction, to which this Court must give full faith and credit. Also there is concern as to how this defendant may utilize the Mississippi URESA to bring his defense forward under the continuing *336 jurisdiction rule. Equitable considerations are entertained by courts in order to attain fairness. This request of Steven is one of those types of claims that is due equitable consideration. In fairness to Elizabeth also, she is entitled to attend the Mississippi hearing on support without fear of a custody challenge. Therefore, the Final Judgment of the chancery court of July 16, 1992, on Steven's claim for credit, is vacated without prejudice to his bringing his request in the Colorado court or litigating his defense to the support arrearage after a resetting for trial of support issues alone.
The July 16, 1992 judgments of the Chancery Court of the Second Judicial District of Bolivar County, Mississippi, are vacated and held for naught.
JUDGMENT IS REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
For the reasons that the majority fails to address the main party to this lawsuit and also plays the role of an attorney, I dissent.
This case comes to this Court with the caption naming Mississippi State Department of Human Services (hereinafter DHS) as the appellant. Oddly enough, however, the majority never addresses DHS but writes as if Elizabeth A. Marquis were the true party. In fact, Ms. Marquis was not even present at the hearing. DHS brought the action for back child support and litigated the issue at trial. That issue was resolved adversely against DHS by the chancellor and should be the law of the case.
DHS filed its brief to this Court on behalf of Elizabeth A. Marquis and raised only one issue  "Did Elizabeth A. Marquis by virtue of filing the URESA complaint submit to the jurisdiction of Mississippi in regard to the issue of child custody?" The majority abrogates the chancellor's order holding that Colorado should adjudicate the custody matter as well as back support. The issue of the chancellor's adjudication of child support, however, was never raised and, appropriately, this Court should not take matters into its own hands and create new issues. The chancellor held that no back support was owed and, accordingly, the judgment should stand.
The majority, in its obfuscatory discourse, held that according to Miss. Code Ann. § 93-11-15 (1972) one cannot sue for custody in an URESA action. They retroactively apply the newly amended § 93-11-15 which states that "[a]wards of custody and orders regarding visitation rights are not contestable under the provisions of the law." Miss. Code Ann. § 93-11-15 (Supp. 1993). The majority, however, failed to read forward to Miss. Code Ann. § 93-11-65 (1972). Section 93-11-65, a part of URESA which is entitled "Custody and support of minor children  additional remedies," provides in part:
In addition to ... other existing remedies, the chancery court of the proper county shall have jurisdiction to entertain suits for the custody, care, support and maintenance of minor children and to hear and determine all such matters ... Proceedings may be brought by or against a resident or nonresident of the State of Mississippi, whether or not having the actual custody of minor children, for the purpose of judicially determining the legal custody of a child. All actions herein authorized may be brought in the county where the child is actually residing, or in the county of the residence of the party who has actual custody, or of the residence of the defendant. (Emphasis added.)
As the majority considers § 93-11-15, it must also consider § 93-11-65 which clearly provides that the chancery court had the jurisdiction to determine the custody issue. Accordingly, I dissent.
NOTES
[1] A subsequent pleading stated that Elizabeth did not personally appear. The children's physical presence was not addressed.
[2] There was apparently no testimony presented in this case. The DHS filed a "Statement of Evidence" on August 18, 1992. Followed this filing, a Finding of Fact and Conclusions of Law was filed by the chancellor on August 20, 1992, but ordered to be filed nunc pro tunc as of July 16, 1992. Additionally, unsigned copies of proceedings in the Colorado court were forwarded to Mississippi, showing a Colorado hearing on August 19, 1992. A guardian ad litem was appointed in Colorado for the children.
[3] Miss. Code Ann. § 93-11-65 contemplate cases in which there has been no prior adjudication of custody.