749 So.2d 1127 (1999)
Jack Hamblin McCUBBIN, Appellant,
v.
Rebecca Wells SEAY, Appellee.
No. 98-CA-00042-COA.
Court of Appeals of Mississippi.
July 27, 1999.
Michael Allen Akers, Keith D. Obert, Brandon, Attorneys for Appellant.
William R. Wright, W. Benton Gregg, Stacey P. Stracener, Jackson, Attorneys for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case is an appeal from a judgment of the Chancery Court of Hinds County adjudicating Jack McCubbin to be in contempt for his failure to perform his support obligations created under a Tennessee judgment of divorce. McCubbin has appealed on a number of grounds, including a claim that the chancellor lacked personal jurisdiction over him. Finding this issue to have merit, we vacate the order of contempt and dismiss this case for lack of jurisdiction. The dismissal is without prejudice for Seay to pursue the merits of her claim by proper proceeding.

I.

Facts
¶ 2. Jack McCubbin and Rebecca Seay were married in Mississippi in 1975. There is no indication in the record, however, that they ever resided in this state after their marriage. To the contrary, it appears that the parties spent their entire married life as residents of the State of Tennessee where they were divorced in 1983 on the ground of irreconcilable differences. As a part of that proceeding, the parties entered into a property settlement *1128 agreement that was approved by the court and incorporated into the divorce decree. The parties had one minor daughter, Memrie, who was five years old at the time and the agreement made a substantial number of provisions regarding the future care and education of the child. Custody was, by agreement, placed with Seay.
¶ 3. Shortly after the divorce, Seay and the child relocated their residence to Mississippi and McCubbin moved to Texas. Besides sending his support payments to Mississippi, McCubbin has had no contact with this state at any time since the divorce. In July 1996, Seay commenced a contempt proceeding in the Hinds County Chancery Court alleging that McCubbin was in default on payment of certain amounts of child support due under an escalation clause contained in the property settlement agreement. McCubbin was served with a summons and a copy of the contempt motion by process server in Texas. McCubbin, through counsel, filed a responsive pleading that, among other things, sought dismissal under Mississippi Rule of Civil Procedure 12(b)(2) for lack of jurisdiction over his person. The chancellor denied the motion to dismiss on that ground and proceeded to reach the merits of the case. He found McCubbin in contempt for his failure to pay certain of Memrie's college education expenses and certain amounts due under the escalation clause, entered judgment against McCubbin for the sums so adjudicated, and assessed McCubbin with $7,762.29 in attorney's fees. This appeal ensued.

II.

In Personam Jurisdiction
¶ 4. McCubbin claims that he was not subject to being personally sued in Mississippi since he had never been a resident of this state, had no significant contacts with Mississippi, and the judgment sought to be enforced was a Tennessee decree. McCubbin's attack on this state's attempt to exercise jurisdiction over his person is based on jurisprudence developed under the due process clause of the United States Constitution that prevents a citizen of one state from being hauled into the courts of another state when to do so would "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). United States Supreme Court decisions in this area pose two considerations that determine whether an attempt to exercise in personam jurisdiction over a nonresident can survive a due process challenge. The two areas of inquiry are "the presence of reasonable notice to the defendant that an action has been brought, ... and a sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum." Kulko v. Superior Court of California, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (citations omitted). With the growing use of private process servers outside the borders of a particular state, as opposed to publication as a means of service, the importance of the notice provision has grown less important. In fact, it is not a legitimate factor in this proceeding since there can be little argument that McCubbin received reasonable notice of the pendency of this contempt action. Nevertheless, that finding does nothing to lessen the importance of the second consideration.
¶ 5. Thus, the issue squarely facing this Court is whether McCubbin had a sufficient connection with the State of Mississippi solely because of his daughter's physical presence in Mississippi to subject him to in personam jurisdiction to resolve a dispute as to his support obligations. The chancellor held that McCubbin did have the necessary connection. He appeared to base his conclusion on several factors. He first said that the Full Faith and Credit for Child Support Orders Act, as enacted by Congress, suggested, though without specifically so holding, that "actions against nonresident defendants were *1129 contemplated by Congress." 28 U.S.C.S § 1738B (Law. Co-op 1989). Our review of the chancellor's decisions on matters of law is de novo. Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994). This Court has reviewed the full text of the Act and can discover no provision that suggests an expansion of traditional views concerning the propriety of a state court assuming personal jurisdiction over a nonresident respondent in a situation such as this. The Act concerns itself primarily with preventing the courts of one state from modifying a support order issued by another state except under certain limited circumstances. 28 U.S.C.S. § 1738B (Law. Co-op 1989). It does not speak to the issue of jurisdiction over a nonresident obligor. We find that the chancellor was in error in his determination on the effect of 28 U.S.C. 1738B on the question of personal jurisdiction, and consider the issue to be one resolved by traditional concepts of due process jurisprudence applicable to all forms of civil litigation. "Personal jurisdiction jurisprudence, constitutional statutory amenability, as well as implementing procedure, is no different in domestic relations litigation than in other cases." Petters v. Petters, 560 So.2d 722, 725 (Miss. 1990).
¶ 6. As a possible second basis for exercising jurisdiction over McCubbin's person, the chancellor suggested that the length of time that McCubbin had paid child support into the State of Mississippi to a Mississippi resident as well as the fact that the parties were married in Mississippi provided the necessary connection between McCubbin and this state. We conclude that this is without merit. There is no indication in this record that the parties, at the time of their marriage, intended to make Mississippi their marital domicile. In fact, every indication is to the contrary. The location that marriage vows were exchanged, standing alone, provides only the most tenuous connection between the marriage partners and the state and would seem insufficient to create a basis for the exercise of personal jurisdiction of a dispute arising many years after the marriage ceremony. Additionally, the domicile of the child, once a divorce is obtained, is a matter largely out of the hands of the noncustodial parent and the mere act of forwarding support funds to the then-existing domicile of the child does not, of itself, give rise to a connection strong enough to establish personal jurisdiction over a nonresident obligor. In fact, these very issues have been answered against Seay by the United States Supreme Court in the previously cited case of Kulko v. Superior Court of California, 436 U.S. at 93-94, 98 S.Ct. 1690. On facts strikingly similar to the case now before us, the Supreme Court dealt with a custodial mother's attempt to personally enforce a New York divorce decree against her former spouse in a California court based on the fact that she and the children were then domiciled in California. The noncustodial father had remained domiciled in New York and had never been in California except briefly during his military service years earlier. On facts similar to the case before us, the parties had married in California during one of those brief stays. Id. at 93, 98 S.Ct. 1690. The Court nevertheless found that the attempted exercise of personal jurisdiction could not pass muster under constitutional due process standards announced in International Shoe Co. v. Washington. Id. at 101, 98 S.Ct. 1690. The Court's ultimate conclusion was that
the mere act of sending a child to California to live with her mother is not a commercial act and connotes no intent to obtain or expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State's judicial jurisdiction.
Id.
¶ 7. The Mississippi Supreme Court has recognized the holding in Kulko in the case of Carpenter v. Allen, 540 So.2d 1334 (Miss.1989). In that case, Carpenter had moved to Mississippi with her daughter *1130 after obtaining a divorce in Ohio. Id. at 1335. She sought to personally enforce Allen's child support obligations in Mississippi; however, Allenwho had never been within the State of Mississippi insofar as the record showedattacked the chancellor's attempted exercise of in personam jurisdiction over him. Id. Carpenter apparently tried to invoke the Uniform Child Custody Jurisdiction Act as a basis for personal jurisdiction over Allen. Before rejecting that alternative argument, the Mississippi Supreme Court said:
It may not fairly be said from this record that Allen has purposefully availed himself of the benefits of the laws of the state of Mississippi or that he derives personal or commercial benefit from his daughter's presence in Mississippi. Ordinarily where such is the case, we would be content to cite Kulko and affirm [the chancellor's order of dismissal for lack of personal jurisdiction]....
Id. at 1336. The court then went on to reject the applicability of the UCCJA in a discussion that has no particular application to the facts of this case now before this Court, the important point in Carpenter being that it recognizes that Kulko answers the due process questions raised by McCubbin favorably to him. There has been, insofar as this Court's research reveals, no statutory or case law relaxation of the clear holding of Kulko. Thus, we are constrained to conclude that the chancellor in this case was manifestly in error, as a matter of law, in finding that McCubbin was amenable to the exercise of in personam jurisdiction over him by the Hinds County Chancery Court. Having timely raised the issue, McCubbin was entitled to prevail on his motion to dismiss, and we now grant that relief.
¶ 8. Of course, our decision does not necessarily end the matter of McCubbin's potential additional responsibility to his child. As the United States Supreme Court noted in Kulko, there are adequate procedural vehicles for the enforcement of whatever obligations McCubbin might have under the agreement "without either party's having to leave his or her own State." Kulko, 436 U.S. at 99, 98 S.Ct. 1690. The Uniform Interstate Family Support Act, as enacted in Mississippi, provides for the initiation of an action in this state, which would result in the commencement of a proceeding against McCubbin in his state of domicile with authority, among other things for that court, to "[d]etermine the amount of any arrearage ..." and to "[e]nforce orders by civil or criminal contempt...." Miss.Code Ann. § 93-25-33 and 35 (1998 Supp.). The State of Texas is a participant in this scheme of enforcement as evidenced by its enactment of the same uniform act effective April 20, 1995. TEX. FAM.CODE ANN. tit. 5, § § 159.001 to 159.902 (West 1998). Our dismissal is, of course, without prejudice to Seay's right to pursue relief under those statutory enactments.
¶ 9. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS VACATED AND THIS CAUSE IS DISMISSED FOR LACK OF JURISDICTION OVER THE PERSON OF THE APPELLANT. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR.
LEE AND MOORE, JJ., NOT PARTICIPATING.