833 So.2d 586 (2002)
HINDS COUNTY BOARD OF SUPERVISORS, Appellant,
v.
James LEGGETTE, Appellee.
No. 2001-CA-01217-COA.
Court of Appeals of Mississippi.
December 10, 2002.
*588 E. Charlene Stimley Priester, Jackson, attorney for appellant.
Cynthia Ann Stewart, Jackson, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES, and BRANTLEY, JJ.
BRANTLEY, J., for the court.
¶ 1. The Circuit Court of the Second Judicial District of Hinds County reversed and vacated the Hinds County Board of Supervisor's (Board) directive to remove a riding arena and attendant facilities from James Leggette's property. Aggrieved, the Board appeals. Finding no error, we affirm the ruling of the circuit court.

FACTS AND PROCEDURAL HISTORY
¶ 2. On December 1, 1992, Mr. James Leggette purchased approximately 177 acres of land located in an unincorporated area of Hinds County zoned as an agricultural district. Article V of the Hinds County Zoning Ordinance sets forth the use regulations in regard to agricultural land. In particular, Section 501 specifies the permitted uses for such agricultural district land, such as non-commercial recreational facilities. Section 502 sets forth the conditional uses such as commercial activities. On February 14, 1995, Leggette filed an application for a Section 502 conditional use permit, wherein, he stated his intention to build a riding arena so that his children and grandchildren could enjoy horses and other equestrian activities. Similar arenas have been previously erected. He filed the request to address any possible commercial concerns.
¶ 3. On March 28, 1995, a public hearing was conducted before the Planning Commission. Leggette presented his plans for the construction of the riding arena on approximately two acres of land and expressed that he wanted to clear up any "commercial" concerns. His intention was to operate the arena in a non-profit manner, but was concerned with the manner in which to conduct the events at the arena, *589 such as charging a riding fee. An opposing land owner then presented the community's non-commercial concerns. The Planning Commission denied his application for a conditional use permit and Leggette appealed the decision to the Hinds County Board of Supervisors.
¶ 4. On May 1, 1995, the Board conducted a second public hearing. Leggette's counsel stated that he was seeking the Board's approval to open his "little riding arena to head off claims of commercial activity that may accompany a fee to ride." Leggette's counsel reiterated that this was not a for-profit operation and further stated that the arena would be open to youths of church groups, Boy Scouts, and any civic group dealing with minors in order to provide them with an opportunity to show their animals. The Board was assured that there would be proper supervision and that law and order would be administered on the premises. A member of the community expressed concerns of nuisances that may be created by the arena and submitted a petition signed by area property owners opposed to the arena. At the conclusion of the hearing, the Board "resolved to accept the planning board's recommendation to deny Leggette's request."
¶ 5. Leggette did not appeal the May 1, 1995 decision by the Board. Subsequent to the Board's hearing, Leggette constructed a horse riding arena on his agriculturally zoned land as provided in Miss. Code Ann. § 17-1-3 (Rev.1995) and in accordance with the zoning ordinance specifications, particularly Section 501. On September 20, 1997, Leggette hosted an equestrian event, attended by approximately one thousand patrons. Leggette did not charge an admission fee; however, donations were allowed and concessions were available. Deputies from the Hinds County Sheriff's Department were also on site during the event for crowd control.
¶ 6. On September 24, 1997, the zoning supervisor reported the horse show to the Board. On October 20, 1997, the Board held a meeting and Leggette was present. At the meeting, the zoning administrator informed the Board "that Miss.Code Ann. § 17-1-3 prevents his office from requiring a permit for land used for agricultural activity or for farm buildings and structures; his office can only control the use of the facility." Leggette's attorney stated that the Board's decision on May 1, 1995, did not deny the construction of the arena, but merely denied a conditional use permit to operate the facility as a commercial arena. After having been informed of the legal authority supporting Leggette's exercise of his property rights, the Board voted in a three-to-two decision to authorize the Zoning Administrator to proceed with appropriate legal action or proceedings to enforce the zoning ordinance and prevent any further activity in violation of the zoning ordinance.
¶ 7. Subsequently, after a hearing on November 17, 1997, on the matter of whether Leggette had a statutory right to erect and use such structures on his property, the Board found that the use of the riding arena and attendant structures was not an agricultural use and did not constitute farm buildings or farm structures as set forth in Miss.Code. Ann. § 17-1-3. The Board also found that the riding arena and attendant structures constituted a commercial and/or public or quasi-public use of the property which was in violation of the zoning ordinance. After another three-to-two vote, the Board issued a resolution which "authorize[d] and direct[ed] the Zoning Administrator to take legal action in an appropriate court of law to seek the removal of the riding arena and attendant facilities from the subject property *590 and any other remedies the court may deem proper." The Board then sent a letter to Leggette ordering him to dismantle the structure.
¶ 8. Leggette appealed the November 17, 1997 ruling to the circuit court. He filed a bill of exceptions pursuant to Miss. Code Ann. § 11-51-75 on December 4, 1997, but it did not contain the required signature of the president of the Board. He filed a second bill of exceptions, which included the required signature of the Board's president, on December 18, 1997. In reversing and vacating the Board's November 17, 1997 directive, the circuit court found that the Board's action directing destruction of the arena amounted to "nothing more than selective enforcement of the zoning regulations ... and was arbitrary and capricious" and violated a statutory right of Leggette as provided in Miss. Code Ann. § 17-1-3. The court further held that Leggette "should be allowed to conduct private non-commercial activities in the riding arena and attendant facilities on his property in a not-for-profit or non-commercial manner and in conformance with other arenas in Hinds County."
ASSIGNMENTS OF ERROR
I. WHETHER THE CIRCUIT COURT HAD SUBJECT MATTER JURISDICTION.
II. WHETHER THE BOARD'S DECISION WAS BEYOND THE POWER OF THE BOARD OR VIOLATED A STATUTORY RIGHT OF JAMES LEGGETTE OR WAS ARBITRARY OR CAPRICIOUS.

STANDARD OF REVIEW
¶ 9. Judicial review of a board of supervisor's findings and decisions is limited. A board of supervisor's conclusions must remain undisturbed unless the board's order: (1) is beyond the scope or power granted to the board by statute; (2) violates the constitutional rights or statutory rights of the aggrieved party; (3) is not supported by substantial evidence; or (4) is arbitrary or capricious.
Board of Law Enforcement Officers Standards & Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996). If a board of supervisor's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious. Public Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 430 (¶ 35) (Miss. 2000). We will review questions of law de novo. McCubbin v. Seay, 749 So.2d 1127 (¶ 5) (Miss.Ct.App.1999).
DISCUSSION
I. WHETHER THE CIRCUIT COURT HAD SUBJECT MATTER JURISDICTION.
¶ 10. On November 17, 1997, the Board issued a resolution which "authorize[d] and direct[ed] the Zoning Administrator to take legal action in an appropriate court of law to seek the removal of the riding arena and attendant facilities from the subject property, and any other remedies the court may deem proper." In a supplemental brief, the Board contends that their resolution was not a "final judgment or decision," but simply a "directive" to the Board's Zoning Administrator to pursue a judicial resolution. Therefore, the Board contends that the circuit court was without subject matter jurisdiction because the resolution was not an appealable judgment or decision pursuant to Miss. Code Ann. § 11-51-75. Miss.Code Ann. § 11-51-75 provides in part that "any person aggrieved by a judgment or a decision of the board of supervisors ... may appeal within ten (10) days from the date of adjournment at which session the board of *591 supervisors ... render such judgment or decision."
¶ 11. In Sanford v. Board of Supervisors, Covington County, the Mississippi Supreme Court stated that "Mississippi Code Annotated § 11-51-5(1972) provides explicitly that appeals to the circuit court from a decision of the county board of supervisors is proper only when brought by a person `aggrieved by a judgment or decision of the board....' Likewise, this Court's own jurisdiction is expressly set forth in Mississippi Code Annotated § 11-51-3 (Rev.1972) as proper only from a `final judgment.'" Sanford v. Board of Supervisors, Covington County, 421 So.2d 488, 490 (Miss.1982). It is well settled that a final judgment has been defined as a "judgment adjudicating the merits of the controversy which settles all the issues as to all the parties." Id.
¶ 12. In the present case, although, the words, "final judgment" or "decision," were not used, we find that on November 17, 1997, the Board rendered its final decision on this matter, having "RESOLVED AND ORDERED" the Zoning Administrator to take legal action in an appropriate court of law to seek the removal of the structures. The language of the resolution alone indicates the finality of the Board's decision to have the structures dismantled. Furthermore, the resolution was the result of an adjudication on the merits of this controversy. The Board found that Leggette's use of the arena violated the zoning ordinance and, therefore, ordered the Zoning Administrator to have it dismantled. Aggrieved, he appealed their decision to dismantle his arena. Even though the Board did not actually arm the Zoning Administrator with a bulldozer and a hard hat, the Board's order to the Zoning Administrator is still considered a final appealable order from which Leggette could appeal pursuant to Miss.Code Ann. § 11-51-5 (1972). Therefore, the circuit court did have subject matter jurisdiction and this assignment of error is without merit.
II. WHETHER THE BOARD'S DECISION WAS BEYOND THE POWER OF THE BOARD OR VIOLATED A STATUTORY RIGHT OF JAMES LEGGETTE OR WAS ARBITRARY OR CAPRICIOUS.
¶ 13. The Board ruled that it had the authority to seek removal of the horse riding arena and attendant facilities from Leggette's property and directed the Zoning Administrator to proceed with legal action in accordance with their decision. Mississippi Code Annotated § 17-1-3 (Supp.2002) gives the board of supervisors of the county the power and authority, with respect to the unincorporated part of the county, "to regulate the height, number of stories and size of a building and other structures, the percentage of a lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the use of buildings, structures and land for trade, industry, residence or other purposes...." This section further states, in pertinent part: "that no permits shall be required with reference to land used for agricultural purposes, including forestry activities as defined in Section 95-3-29(2)(c), or for the erection, maintenance, or repair or extension of farm buildings or farm structures. . . outside the corporate limits of the municipalities." (emphasis added).
¶ 14. Therefore, although the Hinds County Board of Supervisors has the authority to promulgate and enforce zoning regulations under Miss.Code Ann. § 17-1-3, these powers are not absolute and there are statutory exceptions. Leggette does have the right and entitlement to have upon his property those structures that conform to the terms and limitations *592 as provided for in Miss.Code Ann. § 17-1-3. No permit is required for "land used for agricultural purposes ... or for the erection ... of farm buildings or farm structures...."
¶ 15. The Board found that the use of the riding arena and attendant structures was not an agricultural use and did not constitute farm buildings or farm structures as set forth in Miss.Code Ann. § 17-1-3 (Supp.2002). Therefore, the Board concluded that Leggette's horse arena did not fall within the limit or exception to the zoning regulation as set forth in the statute. The Board also found that the riding arena and attendant structures constituted a commercial and/or public or quasi-public use of the property.
¶ 16. We now look to see whether the private, non-profit horse arena constitutes an agricultural use of the land or a farm building or structure as provided in Miss. Code Ann. § 17-1-3. The statute does not specifically address whether or not a horse arena is a permitted agricultural use of the land or a farm building or structure. The Board also does not cite any authority to support their finding that the use of the horse arena is not considered an agricultural purpose and is not a farm structure or building. In addition, Miss.Code Ann. section 95-3-29 (Rev.1994), as provided in § 17-1-3 as a permit exception, does not aid us in our interpretation of the allowed permit exception, "land used for agricultural purposes." Section 95-3-29 only provides the phrase "agricultural operation," and defines it as "any facility for the production and processing of crops, livestock... for commercial or industry purposes." Miss.Code Ann. § 95-3-29(2)(a) (Rev.1994). Therefore, for guidance in our interpretation of the statutory exception, "land used for agricultural purposes," we next look to the definitions that were provided in the Hinds County Zoning Ordinances, which were available to the Board at the time of their decision. Article II of the zoning ordinance defines "agricultural activities" as, "the production, keeping or maintenance, for sale, lease or personal use, of plants and animals useful to man, including but not limited to: ... livestock, including ... horses...."
¶ 17. The purpose of the private, non-profit horse arena was to provide for the personal use of Leggette and the children of the community an opportunity to enjoy horses, equestrian activities, and a place to show their animals. We find that these agricultural activities are synonymous with land used for agricultural purposes.
¶ 18. Therefore, we find that a private, non-profit horse arena in an agricultural district is considered a permitted agricultural use under Miss.Code Ann. § 17-1-3. We recall our standard of review which provides that a board of supervisor's conclusions must remain undisturbed unless the board's order: (1) is beyond the scope or power granted to the board by statute; (2) violates the constitutional rights or statutory rights of the aggrieved party; (3) is not supported by substantial evidence; or (4) is arbitrary or capricious. Board of Law Enforcement Officers Standards & Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996). Thus, we find that the November 17, 1997 resolution of the Board to seek removal of the riding arena and attendant facilities from the subject property was beyond the power of the Board to make and violated Leggette's statutory right to erect without a permit a private non-profit horse arena for agricultural use on his unincorporated property as provided in Miss.Code Ann. § 17-1-3.
¶ 19. Furthermore, the decision of the Board on May 1, 1995, to deny Leggette a conditional use permit effectively only denied him the use of the arena for-profit. As mentioned above, the Board *593 does have the power to regulate the use of the facility under Miss.Code Ann. § 17-1-3 and according to Section 502 of the zoning ordinance, the Board also has the authority to particularly require permits for commercial uses, such as stables, riding academies, and dealing or trading in farm animals. However, section 501(e) of the Hinds County Zoning Ordinance permits the non-commercial use of public or private recreational or open space facilities within an agricultural district without a permit.
¶ 20. We find that Leggette's horse arena was a private non-profit recreational facility which was permitted under Section 501. At the only event, there was no fee charged, nor was there any evidence presented that the facility was being operated for-profit in violation of the zoning ordinance. In addition, a "commercial activity" is defined in Blacks' Law Dictionary as "any type of business activity which is carried on for a profit." BLACK'S LAW DICTIONARY 270 (6th ed.1990). Therefore, we do not find that donations and non-profit concessions are commercial and in violation of Section 501(e). Additionally, Section 501(e) specifically only "excludes country clubs and the like" and states that they should be regulated as public/quasi-public facilities or utilities subject to permits. The horse arena is not a country club or the like, nor is it a public or quasi-public facility. It is a privately owned horse arena. Therefore, the Board's attempt to deny Leggette the use of his property as permitted by the zoning ordinance in Section 501(e) was also arbitrary and capricious.

CONCLUSION
¶ 21. The Board was clearly erroneous by directing the removal of the horse arena in conflict with Leggette's statutory right as provided in Miss.Code Ann. § 17-1-3 to erect such a structure in an agricultural district. In accordance with authorities cited herein and as the facts require, we find that Leggette is entitled to operate his private arena as a non-profit arena only in conformance with the regulations of the zoning ordinance of Hinds County, and we affirm the circuit court in its reversal of the Board. However, this decision in no way prohibits the Board from enforcing the applicable zoning regulations in an effort to prevent any future violation of the zoning ordinance.
¶ 22.THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR.
IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.
IRVING, J., DISSENTING:
¶ 23. By a vote of three to two, the Hinds County Board of Supervisors (the Board), on May 1, 1995, accepted the recommendation of the Planning Commission Board to deny James Leggette a conditional use permit to construct and operate a horse riding arena on certain property zoned for agricultural use.[1] The majority concludes that the Board, which had refused to grant Leggette a conditional use *594 permit to construct the riding arena, did not have the authority to order Leggette to cease and desist operating the arena after Leggette built and began operating the facility without the required permit. The majority reaches this conclusion by finding that the riding arena is considered a permitted-agriculture use under Mississippi Code Annotated section 17-1-3 (Supp.2002), and thus exempted from regulation by the Board. I disagree; therefore, I respectfully dissent.
¶ 24. Mississippi Code Annotated section 17-1-3 (Supp.2002) provides in pertinent part that:
[F]or the purpose of promoting health, safety, morals, or the general welfare of the community, the governing authority... of any county, in its discretion, [is] empowered to regulate the height, number of stories and size of the yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes, but no permits shall be required with reference to land used for agricultural purposes, including forestry activities as defined in Section 95-3-29(2)(c), or for the erection, maintenance, repair or extension of buildings or farm structures....
Miss.Code Ann. § 17-1-3 (Supp.2002) (emphasis added).
¶ 25. The majority acknowledges that the code section does not define the phrase "agricultural purposes" but finds that Article II of the Hinds County Zoning Ordinances does and that, based on the Board's own definition of "agricultural activities," regulation of the riding arena was beyond the power granted to the Board by Mississippi Code Annotated section 17-1-3 (Supp.2002).
¶ 26. Also, the majority correctly points out that if the riding arena was used for agricultural purposes, the Board was without authority to require a permit for its operation, and that, as previously noted, the regulatory statute does not define the phrase "agricultural purposes." However, I believe some guidance can be gleaned from the legislative definition of the phrase, "agricultural operation," as that phrase is defined in Title 95, Chapter 3 of the Mississippi Code of 1972, as annotated and amended.
¶ 27. In section 95-3-29 of Title 95, Chapter 3, entitled, "Immunity of certain agricultural operations from nuisance actions," the phrase, "agricultural operation," is defined as including "without limitation, any facility for the production and processing of crops, livestock, farm-raised fish and fish products, livestock products, wood, timber or forest products, and poultry or poultry products for commercial or industrial purposes." Miss.Code Ann. § 95-3-29(2)(a) (Rev.1994). A horse riding arena is hardly used for the production of crops, livestock, farm-raised fish, etc.
¶ 28. Further, the majority's construction of the definition of the phrase, "agricultural activities," as that phrased is defined in Article II of the Zoning Ordinance of Hinds County is indeed strange, to say the least. This section of the zoning ordinance defines "agricultural activities" as:
The production, keeping or maintenance, for sale, lease or personal use, of plants and animals useful to man, including but not limited to: forages and sod crops; grains and seed crops; dairy animals and dairy products, poultry and poultry products, excluding commercial feed lots; livestock, including beef cattle, sheep, swine, horses, ponies, mules, or goats, or any mutations or hybrids thereof, including the breeding and grazing of any or all of such animals and excluding commercial feed lots; bees and apiary products, fur animals; trees *595 and forest products; fruits of all kinds, including grapes, nuts and berries; vegetables; nursery, floral, ornamental and greenhouse products; or land devoted to a soil conservation or forestry management program.
In my opinion, it is more than a stretch to construe the right "to keep a horse for sale or personal use" to mean conferring the right "to construct and operate a riding arena," not for personal use, but for the community at large.
¶ 29. The facts reveal that the Board did not seek to enjoin Leggette's use of the riding arena until it was brought to the Board's attention by the director of the Department of Permit and Zoning that a horse show had been held at Leggette's place, that approximately one thousand persons attended the show, that several concession stands were in operation on the premises, that contests were held for prizes which were donated by several business, and that some Hinds County deputies were present for crowd control. Also, it appears that no fee was charged for admission to the show but donations in the amount of $10 per person were requested and accepted.
¶ 30. On November 17, 1997, the Board, by the same three-to-two vote, passed a resolution finding that:
[I]n the judgment of the Board of Supervisors, and based upon the evidence presented, the riding arena and attendant structures constructed on the subject property are not an agricultural use and do not constitute farm buildings or farm structures, and, therefore, do not fall within the limit or exception to zoning regulation of Code Section 17-1-3....
[I]n the judgment of the Board of Supervisors, and based upon evidence presented, the riding arena and attendant structures constructed on the subject property constitute a commercial and/or public or quasi-public use of the property, therefore, coming squarely within the regulatory jurisdiction of the Board of Supervisors. . . .
[I]n the judgment of the Board of Supervisors, and based upon evidence presented, the riding arena and attendant structures located on the subject property have been constructed and used in violation of Article V and other provisions of the Hinds County Zoning Ordinance and in contravention of the Board's prior action of May 1, 1995.
¶ 31. I find nothing arbitrary or capricious with the above findings by the Board. It seems to me that using agricultural land for a riding arena is hardly using the land for agricultural purposes, for agricultural operations, or for agricultural activities. Further, I find that it is at least fairly debatable as to whether the activity which occurred at Leggette's riding arena was of a commercial nature rather than of a personal one. This type of activity is hardly consistent with the production, keeping or maintenance, of a horse or horses for sale, lease or personal use.
¶ 32. "A decision by a local governing board is presumed valid, and the burden is upon the person seeking to set it aside to show that it was arbitrary, capricious and unreasonable." Fondren North Renaissance v. Mayor and City Council of the City of Jackson, 749 So.2d 974, 979-80(¶ 18) (Miss.1999) (citing Board of Aldermen v. Conerly, 509 So.2d 877, 885 (Miss. 1987)). "`Fairly debatable' is the antithesis of arbitrary and capricious." Id. at 977 (citing Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss.1987)). "If a decision could be considered fairly debatable then it could not be considered arbitrary or capricious." Id.
*596 ¶ 33. For the reasons presented, I dissent. I would reverse and render the decision of the Hinds County Circuit Court and reinstate the decision of the Board of Supervisors of Hinds County. That decision was to authorize the zoning administrator to take "legal action in the appropriate court of law to seek the removal of the riding arena and attendant facilities from the subject property, and any other remedies the court may deem proper."
KING, P.J., JOINS THIS SEPARATE OPINION.
NOTES
[1] Supervisors George Smith, Douglas Anderson, and Peggy Hopson Calhoun voted to accept the Planning Commission Board's recommendation to deny the permit, while Supervisors Joseph Lauderdale and Ronnie Chapell voted against accepting the recommendation.