# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01044-COA

PAUL KEENUM                                                APPELLANT

v.

THE CITY OF MOSS POINT, MISSISSIPPI AND          APPELLEES
FRANKIE BROWN

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2021 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER BRICE WIGGINS |
| ATTORNEYS FOR APPELLEES: | AMY LASSITTER ST. PE' |
| | ROBERT THOMAS SCHWARTZ |
| | CHRISTIAN J. STRICKLAND |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 07/25/2023 |
| MOTION FOR REHEARING FILED: | |

## BEFORE WILSON, P.J., WESTBROOKS AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1. On August 18, 2021, the Jackson County Circuit Court affirmed the decision of the City of Moss Point's mayor and the Board of Aldermen (collectively "Moss Point") to approve Frankie Brown's request for a special exception to Moss Point's zoning ordinances (Zoning Ordinances) to allow his proposed development of a "semi-public recreational area" in an area zoned as "R-1A", which is primarily residential. Aggrieved by the decision, adjoining landowner Paul Keenum appealed.

## FACTS AND PROCEDURAL HISTORY

¶2. On June 5, 2020, Brown submitted an application to the Board of Adjustment to

develop a "semi-public recreational area" in the City of Moss Point. The proposed development would be located in an area zoned R-1A, which is primarily designated for single family residential development. A "semi-public recreational area" is a permitted use as a special exception in a R-1A zone. According to Brown's expert, Donovan Scruggs, the proposed project would include (1) additional public parking for approximately thirty trucks and trailers adjacent to the existing Jackson County McInnis Bayou Boat Launch; (2) a recreational area with amenities, including a pier, docking slips, kayak rentals, picnic tables, and outdoor family games; (3) an on-river fueling station for boaters; and (4) a bait shop, a place to purchase snacks and beverages, and a restaurant on the river and similar retail. By submitting his application, Brown sought to have Moss Point grant him a special exception to the Zoning Ordinance and determine that his proposed development qualified as a "semi-public recreational area" as provided by the ordinance.

¶3. On July 13, 2020, the Board of Adjustment considered Brown's application and recommended that it be approved by the Board of Aldermen. The minutes from the July 13, 2020 meeting reflected that two individuals presented arguments against the proposed development. Rhonda Rigby claimed that "she owned the public street and/or the areas surrounding the public street," and she was concerned with the traffic that the proposed development would bring to the area. She claimed that her family had previously operated a restaurant on the same street, and they planned to reopen the restaurant in the future.[1] Paul

---

[1] Moss Point's brief and Brown's expert's report show that Rigby had "operated a very popular and crowded restaurant and bar, Choctaw Marina," which had been allowed to continue to operate as a non-conforming use when the present zoning ordinances were enacted. However, it was destroyed during Hurricane Katrina and lost its non-conforming-

Keenum, an adjoining landowner, claimed that he was concerned about the traffic that the development would cause, as well as the environmental impact of the fueling station on the water. Because the new development would serve alcohol, he argued the business would interfere with his right to peacefully enjoy his home.

¶4.     On July 21, 2020, Keenum's counsel sent a notice of appeal of the Board of Adjustment's decision to the Moss Point City Clerk. On August 11, 2020, the Board of Aldermen considered the application and, by a vote of 6 to 1, approved the recommendation of the Board of Adjustment to grant Brown's application for the special exception designation. Keenum and Rigby appealed to the Jackson County Circuit Court. In their notice of appeal they argued that Moss Point's approval of this special exception "violated the R1A zoning where the property is located leading to placing what amounts to a commercial business in [a] residential area zoned R1A." On August 18, 2021, the circuit court entered an order affirming the Board of Aldermen's decision, finding that Moss Point's decision to grant the special exception "was not arbitrary or capricious and was supported by substantial evidence."[2]

## STANDARD OF REVIEW

use status when it was not re-established within one year thereafter.

[2] The circuit court's decision to affirm Moss Point's interpretation occurred at a time when the standard of appellate review required that an appellate court give deference to Moss Point's interpretation of its own ordinances. *See Hatfield v. Bd. of Supervisors of Madison Cnty.*, 235 So. 3d 18, 19 (¶1) (Miss. 2017) ("In construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities."). This standard was replaced by a de novo standard of review on February 3, 2022, in *Wheelan v. City of Gautier*, 332 So. 3d 851, 859 (¶19) (Miss. 2022).

¶5.    The interpretation of a zoning ordinance is a question of law, and we are to apply a de novo standard of review. *Wheelan v. City of Gautier*, 332 So. 3d 851, 856-59 (¶¶16-19) (Miss. 2022). We must not adopt an interpretation of an ordinance that renders other parts of the same ordinance meaningless. *Id*. at 859 (¶20).

## ANALYSIS

¶6.    The portion of the zoning ordinance covering the proposed site provides as follows:

**SECTION 402       R-1A SINGLE FAMILY RESIDENTIAL DISTRICT (Low Density)**

402.1 GENERAL PURPOSE
The purpose of this district is to permit the development and continued maintenance of low residential densities in an urban setting consisting primarily of single family residential development, by relatively low overall density with lots of at least 12,000 square feet per dwelling unit.

402.2 USES PERMITTED
Single family residential dwellings and accessory uses and structures and permitted and exempted signs as listed within this district.

402.3 USES PERMITTED AS *SPECIAL EXCEPTIONS*
      1.    Home occupations
      2.    Country clubs and *semi-public recreational areas*
      3.    Churches
      4.    Private or parochial schools having a teaching curriculum and teaching conditions equivalent to public schools.

402.4 USES PROHIBITED
      1.    *Commercial* and industrial uses
      2.    Individual mobile homes
      3.    Mobile home parks or subdivision
      4.    Trailer parks and related uses.

(Emphasis added).  Moss Point interpreted and applied the above ordinance to allow the development that Brown proposed to fall within the "Uses Permitted as Special Exceptions"

4

in the R-1A zone as a "semi-public recreational area." The question we are called to answer is whether Moss Point erred in its interpretation and application of its ordinance by granting the special exception for Brown's project.

¶7.     The Mississippi Supreme Court has given us guidance in *Hatfield*, 235 So. 3d at 20-21 (¶9), as to how to interpret an ordinance:

> "[Z]oning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be obtained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the zoning ordinance as a whole." *City of Gulfport v. Daniels*, 231 Miss. 599, 604-05, 97 So. 2d 218, 220 (1957).

In our de novo review of Moss Point's interpretation and application of its Zoning Ordinance in this case, we must consider the common and accepted usage of the words in the ordinance and the general structure of the ordinance as a whole.

¶8.     Brown used Moss Point's "Application/Request to Zoning Board of Adjustment" to make his request for a special exception. A "special exception" is defined in the Zoning Ordinance in Section 201 as

> [a] use that would not be appropriate generally or without restriction throughout a zoning district, but which, if controlled as to number, area, location, or relation to the neighborhood, would promote public health, safety, convenience, or general welfare. Such uses may be permitted in a zoning district in accordance with the provisions of this chapter as special exceptions if specific provisions are made in the district regulations for such use.

¶9.     As noted above, a "semi-public recreational area" is a use permitted by special exception in a R-1A zone; however, the term "semi-public recreational area" is not defined in the Zoning Ordinance. The parties have not cited, and we have not found, a Mississippi case where the phrase "semi-public recreational area" has been defined. Brown put on proof

5

as to the nature of his proposed development and argued that it qualified as a "semi-public recreational area." Moss Point agreed with his argument.

¶10.    From a different perspective, while a "semi-public recreational area" may be a permitted use by special exception in a R-1A zone, *commercial uses are prohibited* in a R-1A zone by Section 402.4. Additionally, there is no definition of "commercial uses" in the Zoning Ordinance. However, in ruling on a zoning matter where the question was whether the property was being used for commercial activity, this Court stated in *Hinds County Board of Supervisors v. Leggette*, 833 So. 2d 586, 593 (¶20) (Miss. Ct. App. 2002), that

> "commercial activity" is defined in Black[s'] Law Dictionary as "any type of business activity which is carried on for a profit." BLACK'S LAW DICTIONARY 270 (6th ed.1990).

A "commercial use," giving those words their "common and accepted usage," is any activity that is carried on for a profit and that type of use is a prohibited use in a R-1A zone. While there may be some question as to an exact definition of a "semi-public recreational area," there is no question that Brown's project, with kayak rentals, fuel sales, bait sales, snack and beverage sales, a restaurant, and other retail, was intended to be a "business activity carried on for a profit."

¶11.    The question then becomes whether a special exception designation can be given to a prohibited use. This issue was identified as a concern in *Drews v. City of Hattiesburg*, 904 So. 2d 138, 141 (¶9) (Miss. 2005), where the supreme court warned:

> Variances which are incompatible with the terms of an ordinance should not be granted:
>
>> Variances were conceived initially as a means for granting relief

6

from height, bulk, and location restrictions in the ordinances which rendered use of the property impossible or impractical. No conceptual problems arise when the variance is granted to authorize minor departures from the terms of the ordinance; e.g. to permit a landowner to place the structure on his lot nearer the lot line than is permitted by the set-back or side-yard requirements. *Such relief does not authorize a use inconsistent with the ordinance* and, consequently, does not constitute rezoning under the guise of a variance. . . . Bulk variances afford relief to the landowner who proves unnecessary and unique hardship, but does not request relief which offends the spirit of the ordinance.

**On the other hand, serious questions arise when a variance is granted to permit a use otherwise prohibited by the ordinance; e.g., a service station or quick-stop grocery in a residential district. The most obvious danger is that the variance will be utilized to by-pass procedural safeguards required for valid amendment.**

Robert C. Khayat & David L. Reynolds, *Zoning Law in Mississippi*, 45 Miss. L.J. 365, 383 (1974) (footnotes omitted).

(Emphasis added). Following the warning in *Drews*, the court in *Modak-Truran v. Johnson*, 18 So. 3d 206, 209-11 (¶¶16-20) (Miss. 2009), found "spot zoning" to have occurred when the City of Jackson passed a "text amendment" that effectively rezoned the Fairview Inn from residential to commercial. In reversing the City's action, the court stated:

An example of an arbitrary or discriminatory zoning decision is "spot zoning." In the present case, the special master determined that the amendments to the zoning ordinance were invalid because they resulted in impermissible spot zoning. Spot zoning is defined as "a small island of relatively intense use surrounded by a sea of less intense use." 2 E.C. Yokley, Zoning Law and Practice § 13-2 (4th ed. 2000). The term has been used to describe a zoning ordinance which is amended to **"reclassify[ ] one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith."** *Drews v. City of Hattiesburg*, 904 So. 2d 138, 141 (Miss. 2005) (quoting *McWaters v. City of Biloxi*, 591 So. 2d 824, 828 (Miss. 1991)).

. . . .

Similarly, in the present case, *the amendments allow the Fairview Inn to conduct highly commercial operations within an area restricted to one-and two-family dwellings. Before the amendments, the only use permits allowed in R-2 zones were for limited purposes such as schools, churches, and group homes.* Zoning Ordinance § 602.02.3. However, with the addition of "Class B Bed and Breakfast with Restaurant," the Fairview Inn was granted permission to operate a general restaurant within an R-2 zone, an activity allowed in areas zoned C-3 commercial districts. In addition, by allowing existing Class B bed and breakfast inns to operate restaurants "as of right," the amendments exempted the Fairview Inn from having to apply for a use permit. The special master correctly determined that the amendments significantly altered and expanded the activities previously allowed on R-2 properties, and *effectively rezoned the Fairview Inn from residential to commercial property*. As in *Drews*, the amendments effectively circumvent the stringent procedural requirements for rezoning.

*Modak-Truran*, 18 So. 3d at 209-11 (¶¶16-20) (emphasis added).

¶12.   There is nothing in the record before us that shows Moss Point considered that Brown's commercial for-profit venture he proposed was a prohibited use under the Zoning Ordinance. Instead,  Moss Point's interpretation of "semi-public recreational area" in this instance would render meaningless the clear prohibition of commercial uses in R-1A zones.

¶13.   Moss Point contends that Keenum has waived this point because he did not raise the issue of the prohibition of commercial uses before either the board or the circuit court, or in his initial brief on appeal. However, in his notice of appeal to the circuit court and in his brief, he does raise the issue that Moss Point's interpretation of the ordinance has the effect of allowing a commercial business in a residential area zoned R-1A. It is true that Keenum's arguments were primarily based upon his belief the Brown's project constituted a "marina" in a residential zone.

8

¶14. In any event, Keenum argued that Moss Point erred in its interpretation and application of the Zoning Ordinance. As a part of our de novo review of this question of law, we find, as did the court in *Wheelan*, that Moss Point's interpretation and application of its Zoning Ordinance in this case rendered other portions of the ordinance meaningless. *See Wheelan*, 332 So. 3d at 853 (¶3).

## CONCLUSION

¶15. The decisions of the circuit court and Moss Point granting Brown's request for a special exception are reversed and rendered.

¶16. **REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**